Argued March 2, affirmed March 19, 1979

MOON, *Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(No. 77-1103, CA 11897)

591 P2d 1193

Edwin D. Harris, Madras, argued the cause for petitioner. With him on the brief was Phelps & Harris, Madras.

Lawrence J. Hall, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Schwab, Chief Judge, and Thornton, Lee and Gillette, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Claimant appeals from an order of the Workers' Compensation Board affirming an order of the referee denying her claim for aggravation. Claimant sprained her neck in February of 1972. In September of 1972 the Disability Prevention Division made a final evaluation as follows:

"1. Probable cervical strain with only minimal demonstrable disability.

"2. Large functional overlay responsible for most of her continuing symptomatology.

"3. Cervical X-rays, essentially normal.

"4. Moderately severe psychopathology with depressive neurosis.

"5. Claim closure recommended.

"6. Claimant can return to her former job."

Claimant's personal doctor agreed with the conclusions of the Disability Prevention Division. The claim was closed on October 3, 1972, with an award of 15 percent unscheduled disability. In 1976 claimant filed a claim for aggravation, contending that both her physical and emotional condition had materially worsened. We find that she has not proven her contentions.

After her claim was initially closed in October of 1972 she was seen by Dr. Keizer, an orthopedist.

His findings included some tenderness and muscle tightness but were largely normal objectively. He gave no opinion as to aggravation. In April of 1976 she began treatment with a different orthopedist, Dr. McKillop. He treated her for two or three months. His final report of October 15, 1976, indicates that most of her symptoms were due to a tension-anxiety state, and he felt that there had been no increase in any permanent partial disability. Another orthopedist, Dr. Butler, also made primarily normal orthopedic and neurological findings. There is no evidence of any physical worsening.

The only remaining question then is whether she has suffered an aggravation of her psychological condition. Claimant seems to have relied totally on one statement by Dr. Butler: "My impression is one of a significant emotional cripple secondary to her neck injury." However, that report does not indicate that he knew of the unrelated anxiety-producing events which claimant had recently experienced. She testified at the hearing that her husband had died a year prior to her examination by Dr. Butler after being in a coma for ten months. Dr. Butler's later reports indicate that she "emphatically denied having any family or emotional difficulty," and stated, " * * * chronic emotional difficulty of unknown type."

There is no other medical evidence to link claimant's current anxiety or other psychological problems with her neck pain arising from the job in 1972. For the reasons we have stated we do not find that the one statement by Dr. Butler, "My impression is one of a significant emotional cripple secondary to her neck injury," is entitled to any weight.[1]

Affirmed.

---

[1] The referee's order, apparently concurred in by the Board, states "he [Dr. Butler] described claimant as an emotional cripple secondary to a back injury. By secondary the referee does not take the doctor to mean caused by." Our understanding of the general meaning of the phrase "secondary to" in the workers' compensation and tort fields is diametrically opposed to the referee's.